THE FRICK COMPANY V. WILLIAM GEDDES CARSON.
No. 70.

1. PETITION—*Proper Rule of Pleading.* It is not the proper rule and practice of pleading for the petition to allege a denial or avoidance of some of the facts which may be set up by the defendant as a defense to the cause of action contained in the petition. If such facts are alleged in the answer, the proper place to deny or avoid them is in the reply.

2. RES JUDICATA—*Evidence Insufficient to Warrant Instructions.* Where the pleadings and the statement of the case to the jury are silent upon the question of a former adjudication of any facts or causes of action at issue, and the pleadings and journal entry of judgment of the former trial are not offered in evidence, and no reason given for the failure to offer them, *held*, that there is no evidence which would warrant the court in giving instructions to the jury that such fact or cause of action was *res judicata.*

MEMORANDUM.—Error from Cowley district court; M. G. TROUP, judge. Action on a contract of sale by The Frick Company, a corporation, against William Geddes Carson. Judgment for defendant. Plaintiff brings the case to this court. Affirmed. The opinion herein, filed February 6, 1896, states the material facts.

*Torrance & Torrance,* for plaintiff in error.
*Ben. S. Henderson,* for defendant in error.

The opinion of the court was delivered by

DENNISON, J.: This action was commenced in the district court of Cowley county, Kansas, by the plaintiff to recover $300 which it alleges was owing to it from the defendant, being a part of the purchase-price of a thrashing engine sold by it to the defendant. It appears from the evidence, that Clark and Andrews purchased the engine from the Frick Company, and

to secure $200 of the purchase price thereof they executed and delivered to said company a chattel mortgage upon said engine, two mules, a horse, and a wagon.    The mortgage was duly recorded and renewed.    Clark and Andrews also executed and delivered to the Bank of Oxford a second chattel mortgage upon said engine, and to Ed. J. McMullen & Co. a third one.    The engine was taken and sold upon one or both of these subsequent mortgages, and was purchased by one Smith, a member of the firm of McMullen & Co.    Shortly afterward this defendant purchased the engine for the sum of $275.    He received a bill of sale from the bank and an assignment of their note and mortgage from McMullen & Co.    At the time of his purchase he knew nothing of the existence of the first mortgage.    Afterward he expended about $100 for repairs upon the engine.    Some time afterward the Frick Company commenced its action in replevin against this defendant to recover the possession of the engine, alleging its special ownership by reason of said chattel mortgage.    The amount due and unpaid upon said mortgage was $122.47 and interest.    Car son, relying upon the bank and McMullen & Co. to defend the title to the engine, made default, and the Frick Company obtained a judgment for the possession of the engine, and it was taken into the possession of the sheriff under an execution issued thereunder, but was afterward released.    David C. Beach, who was the attorney for the Frick Company, also became the attorney for Carson, and brought suit for him against the Bank of Oxford and McMullen & Co. to recover the purchase price of the engine from them. During the time Beach was acting as attorney for both these parties, he was endeavoring to sell the engine to Carson, and some considerable negotiations were had

between them about it.   Beach claims that on December 31, 1888, Carson agreed to buy the engine for $400, and pay $100 cash and $300 in one year thereafter, at 8 per cent. interest, with approved security.   There was some oral evidence tending to show that, some time prior to the commencement of this suit, the company, by said Beach, its attorney, brought suit against said Carson for the $100, and had obtained a judgment for the sum of $100 and costs against said Carson, which he paid in full.   Some time after Carson had employed another attorney to protect his rights, he tendered to said Beach, as agent and attorney for the Frick Company, the sum of $160, as being the amount of the balance due it upon the mortgage by virtue of which it held its special lien, and its costs.   Beach refused to accept the tender because of the claim of ownership of the engine.

In the original petition filed in this case, the plaintiff, in addition to the allegation of indebtedness and the nonpayment thereof, set up the former suit and a claim that the question of the sale and delivery of the engine had been adjudicated between these parties, and that the same had become *res judicata*.   The court sustained a motion to strike out all that portion of the petition as being redundant, irrelevant, and surplusage, and prejudicial to the rights of the defendant.   The plaintiff thereupon filed an amended petition, alleging the sale and delivery and the failure to pay $300 of the purchase price.   The defendant answered, denying generally and specially all the allegations of the petition.   The defendant also filed an amended answer, but the most of it was stricken out, upon motion, and he obtained leave to withdraw the remainder of it.   Judgment was rendered against the defendant on default, but, upon a sufficient showing, it was opened

up and he was let in to defend.    Afterward the plaintiff filed a motion for leave to amend its petition by refiling its original petition, which said motion was overruled.    Verdict and judgment were rendered for the defendant, and the plaintiff brings the case here for review.

All the errors complained of in this case relate to the one question of *res judicata*, and the only thing for us to determine is the rights of the parties in relation thereto.    The defendant's attorney argues at considerable length in his brief the question of whether there was a sale and purchase of the engine.    That question was submitted to the jury and they decided that there was not.    The court approved their finding, and as there was evidence tending to establish that finding, and the court committed no error in instructing the jury upon this point, there is nothing for us to review thereon.    The only question for us to determine is as to whether the defendant is estopped from denying the sale, and, if so, Did the plaintiff pursue the right course to obtain a ruling in its favor upon the question?    The court committed no error in striking out that portion of the petition which pertained to the former trial, or in refusing permission to refile the same, for the reason that the plaintiff had no right to anticipate the defense of the defendant and allege in the petition things which would be proper to plead in the reply, if warranted by the answer.

The petition must contain a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. (Gen. Stat. 1889, ¶ 4170.)    If the answer had set up a defense which had been adjudicated, it should have been traversed by the reply.    This is the proper rule and

Frick v. Carson.

practice of pleading.    But suppose the question had been properly put in issue by the pleadings, or, if the evidence of a former adjudication could be introduced under the general allegations without being specially pleaded, the question would then be as to the sufficiency of the evidence.    In other words, What was adjudicated in the former suit?    What were the issues joined and what was the finding?    The pleadings in the former suit were not offered in evidence; neither was the journal entry of judgment.    The attorney for the plaintiff said nothing about the former adjudication in his statement of his case to the jury, but squarely made the issue upon the sale and delivery of the engine and the failure to pay $300 of the purchase price thereof.    Beach testified that $100 had been paid on the contract.    On cross-examination, he said that the $100 had been paid after judgment had been rendered for it, and that it was finally agreed that the whole matter should be adjudicated by the trial of that case in the justice court for $100.    Mr. Carson said: "If we won that case in the justice court, that would settle the whole controversy."    It does not clearly appear what controversy was meant.    If the contention of Beach is correct, Carson had violated his whole agreement, which was to buy the engine and pay $100 cash, and give approved security for the remaining $300 in one year, at 8 per cent. interest.    For aught that appears here to the contrary, the former suit may have been for damages for the failure of Carson to perform the whole agreement.    This may have been the adjudication to which he referred.    We do now know, because there is nothing in the record to inform us.

There was no evidence in this case which would warrant the court in giving instructions to the jury

that the facts in this case are *res judicata*, and there has been no material error committed prejudicial to the substantial rights of the plaintiff in error. On the contrary, the plaintiff has received everything it is entitled to, either in law or equity. It had received the total purchase price for the engine from Clark and Andrews, except $122.47 and interest. It had been tendered and had refused, because of a claim of ownership, $160 from Carson, who was the owner of the engine at that time, subject to the rights of the plaintiff under its mortgage, which gave it a special ownership to secure the balance of the purchase price. The plaintiff had reduced the engine to possession under its mortgage, but had not sold it, either publicly or privately, as it was required to do by the express terms of the mortgage. It was not the absolute owner of it, and had no right to it after it had received the amount of its claim and the expenses it had incurred by reason thereof. Fair treatment to this defendant would have permitted him to pay the company its claim, and then have sued the Bank of Oxford and McMullen & Co. for the amount he had expended in extinguishing a prior lien.

The court, in its instruction to the jury upon the question of a former adjudication, probably assumed that there was more evidence in the record upon that point than the record warrants, and upon the assumed condition of the record its instruction is not strictly the law upon the question of *res judicata*, but the rights of the plaintiff in error are not prejudiced thereby.

The judgment of the district court is affirmed.

All the Judges concurring.